Thomson, J.
In an action brought by the appellant against C. W. Phelps and W. D. Pennock, a writ of attachment was issued and levied upon a printing press, and certain type and other printing material, belonging to the attachment defendants. The latter procured the release of the property so taken, by executing a bond or undertaking as provided by the statute, with A. J. Woodside and S. J. McClanathan, as sureties, conditioned for the redelivery of the property to the proper officer in case the plaintiff should recover judgment in the action and the attachment should not be dissolved, and for the pay *470 ment of the value of the property in default of such redelivery. This suit was brought upon the redelivery bond. The complaint set forth the instrument; alleged that the attachment was sustained, and that the plaintiff recovered judgment in the action for $546.63 and costs; and averred that default was made in the redelivery of the property in that, when the property was released to the attachment defendants, it was new and in good condition, whereas, when it was redelivered by them, it was injured and damaged by the use which they had given it while it was in their possession. The damage was laid at $420.
The denials in the answer are unintelligible. Each is confined to a numbered paragraph of the complaint. There are no numbered' paragraphs in the complaint. The answer alleged that at the time of the redelivery, the plaintiff had ample opportunity to examine it, and that it was accepted by the officer in his presence without objection from him. The trial resulted in a verdict and judgment for the defendants, and the plaintiff appealed.
At the trial the plaintiff produced evidence showing that the property had been used by the attachment defendants after it was released to them, and that the consequence of its use was a considerable diminution of its value. It appeared that at the sheriff’s sale of the property, it was bid in by the plaintiff for $250. In Creswell v. Woodside, 8 Colo. App. 514, a former proceeding upon the same bond, by the same plaintiff against the same defendants, although we adjudged the complaint bad, we held that a return of property worn and damaged by use, which was in good condition when received, was not a return of substantially the same property, and constituted a breach of the conditions of the bond.
The plaintiff requested an instruction to the effect that if the goods, when they were redelivered, were not in substantially the condition they were in when released to the attachment defendants, and that if the difference in their condition was caused by the use made of them by the attachment defendants, the plaintiff was entitled to a verdict for $360. We *471 do not entirely understand what was meant by $360. That sum was possibly intended to represent the difference between the judgment, with interest added, and the amount for which the goods were sold, after deducting costs. The court committed no error in refusing the request. The utmost to which the plaintiff was entitled, was the amount of diminution in value of the goods between the date of their release, and the date of their redelivery, resulting from their use by the attachment defendants, not to exceed the unpaid residue of the judgment; and that amount could be ascertained only by proof.
Over the objection of the plaintiff, the court instructed the jury as follows:
7. The undertaldng given by the defendants herein was in the alternative, to redeliver the attached property on demand, to the proper officer or pay the value thereof; and the defendants had the right to do either the one thing or the other; the plaintiff had the right, if upon inspection and examination of said property he found it to be injured or damaged, and for that reason in a worse condition than when attached, to decline to receive it in a damaged or injured condition, and in that event could have claimed of the defendants the value thereof, to the extent of the amount actually remaining at that time unpaid on the judgment in the county court rendered on June 6, 1892, in his favor against Phelps and Pennock; if the jury find from the evidence that the plaintiff, either himself or through his agent, examined said property, or had the opportunity and means of examining the same prior to said redelivery, and after such examination or opportunity to examine, himself or by his agent, made demand on said Phelps for a redelivery of said property under said undertaking, and accepted a redelivery from him, without objections to the quantity, quality or condition thereof, and without making any claim that said property was injured or damaged, and that the proper officer, with the knowledge of the plaintiff, advertised said property for sale and sold the same to the plaintiff; and that the defendants were thereby *472 led to and did believe that the plaintiff had accepted said redelivery as a compliance with the primary condition of said undertaking, and were thereby misled and deceived or lulled into a sense of feeling of security with reference to their liability on said undertaking, and thereby prevented from taking steps to protect themselves, and from exercising their right of election to pay the value of said property to the extent of the amount remaining unpaid on said judgment, and retain the same, such conduct on the part of the plaintiff would amount to an acceptance by him of said redelivery as a compliance with the primary condition of said undertaking, and he would thereby be estopped from thereafter asserting that said defendants had made default therein, or that said property was injured or damaged.”
“ 8. The liability of the defendants on said undertaking, in case of a failure to redeliver said property, was to pay the full value thereof, up to the amount, but not in excess of the judgment recovered by the plaintiff against Phelps and Pennock ; and if the jury find upon the evidence that the value of the attached property when redelivered to the proper officer by Phelps on May 10,1893, together with the cash payment of $300, made by Willis B. Herr, to the plaintiff on December 18, 1897, equals or exceeds the amount of said judgment, including interest and costs, in that event, the plaintiff is not entitled to recover, and you are further instructed that the sum for which said property sold at sheriff’s sale is not conclusive of its value, but a circumstance merely in evidence which you may consider in connection with all the other evidence in the case.”
Both these instructions are fatally erroneous. The seventh assumes that the plaintiff accepted the property, and applies to him a doctrine which obtains in the case of a debt payable in personal property in good condition, and which doctrine is that it devolves upon the payee, when the property is tendered, to determine whether it is in good order or not; and that, if he accepts it, he is not permitted to question its condition. Manufacturing Co. v. Funge, 109 U. S. 651. Be *473 tween such a case and the one at bar, there is no likeness or analogy. These goods were not delivered in payment of a debt. With their acceptance or rejection, tl?e plaintiff had nothing to do. They had been levied upon by the sheriff, released to the attachment defendants, and were returned, not to the plaintiff, but to the sheriff. Upon their receipt by the latter, it became his duty to sell them, and apply the proceeds on the judgment. Inasmuch as the identical articles released were brought to him, he was bound to receive them. In the matter of their acceptance, the sheriff had no discretion. And a refusal by him to receive the property, with or without the consent of the plaintiff, would have discharged the sureties. It was the right of the latter that the property, whether damaged or not, should be received and sold, and the proceeds applied upon the judgment in reduction of their own liability. So far as we can see, in the acceptance of the property, and the subsequent proceedings, there was a substantial compliance with the law. See Yelton v. Slinkard, 85 Ind. 190. The instruction we have been considering, is inexplicable only on the hypothesis of a complete misconception of the case.
The eighth instruction is equally bad. In glancing over the record, we failed to discover any evidence of the payment of $300. In so far as we have observed, the only intimation of such payment is contained in this instruction. But we do not think it necessary to make this feature of the instruction the subject of criticism. Our objection goes deeper. Whether the recital of the payment is warranted by the facts or not, the principle of the instruction is the same. It undertakes to charge the plaintiff with the value of the property returned, regardless of the amount which it brought at the sale. A general statement of the proposition would be that a fair and legal sale of property taken on execution, would not conclude the parties to the judgment. The judgment defendant might say that it was worth more than it brought, submit the question of its value to a jury, and if they should find for him, compel the judgment plaintiff to account to him *474 for the excess, that is, for something which was never received. This is a new doctrine to us. If a creditor, after he has reduced his claim to judgment, is compelled to take property he does not want, at a valuation fixed by a stranger; or if, after its sale by the proper officer in conformity with law, he is compelled to make good to the defendant such excess of value as a jury may find, over the amount realized at the sale, his situation is certainly not a comfortable one. Upon that theory, it behooves every person to avoid being a creditor.
But the law is not so. Property which has been released to the attachment defendant, where the attachment is sustained and judgment recovered against him, is redelivered to the sheriff for the purpose of being applied to the payment of the judgment. Mills’ Ann. Code, sec. 112. The law provides but one method of applying property levied upon, to the payment of a judgment, and that is by its sale. And if the sale is regular and fair, the amount of the highest responsible bid, is, as between the parties, conclusive of the value of the property.
There is no significance in the fact, that, in this case, the plaintiff was the purchaser at the sheriff’s sale. He was under no disability; he was upon the same footing with any other bidder, and if the sale was in all respects fair, the result was precisely the same as if he had been a stranger. His bid was the highest, and surely these defendants cannot complain of an act by means of which the judgment received a larger credit than it would have received otherwise; and the supposition of the seventh instruction, that they were, or could have been, misled or deceived by an act from which they knew they derived a benefit, is not to be entertained.
The judgment should be reversed.

Reversed.